EZEKIEL SPITZ
*vs.*
CENTURY INDEMNITY CO.

Superior Court    New London County    File No. 14486

MEMORANDUM FILED MARCH 20, 1942.

*Charles Suisman,* of New London, for the Plaintiff.

*Harrison & Harrison,* of New Haven, for the Defendant.

O'SULLIVAN, J. There is little, if any, dispute as to the facts upon which this litigation is built. The problems are legal, not factual, and are presented through two special defenses to a complaint, all of whose allegations have been established.

It appears that on October 5, 1938, the plaintiff instituted an action against Max Abrams, whereby he sought an accounting of rents collected by Abrams from various tenants occupy-

ing a parcel of land on State Street, New London, owned in common by the parties. The officer to whom the writ was directed attached Abrams' interest in the land.

After the return day, the court appointed Spitz as receiver to collect the rents *pendente lite*. Some time thereafter, an interlocutory judgment was entered ordering an accounting and an auditor was appointed upon whose report, subsequently accepted, judgment was rendered during October, 1940, that Spitz recover of Abrams $6,012.71 damages and costs taxed at $1,617.19.

When the case was about ready for final disposition, Spitz had in his possession as receiver $2,310.25, which was made subject to a rather contradictory order, in that Spitz was directed by the court to "pay to himself as plaintiff the sum of $2,310.25 which is the balance on hand out of the rent receipts to be applied upon judgment herein", with the further provision "that the plaintiff give the defendant a satisfaction piece for so much of the judgment as represents Abrams' share of said money in hands of the receiver paid to the plaintiff under this order."

Obviously, the order was improperly phrased, because one-half of the $2,310.25 belonged to Spitz and he could hardly be required to apply his own share to reduce a judgment he had obtained against Abrams. Fortunately, the latter part of the quotation expresses and explains the real intent the court had in mind. This, it must be apparent, contemplated that only Abrams' share, amounting to $1,155.13, should be used in partial satisfaction of the judgment. With such a reduction, the judgment fell in amount to $4,857.58, the taxable costs still remaining at $1,617.19.

While the foregoing action was pending, two other events occurred which require consideration. On February 1, 1939, Spitz instituted a second action against Abrams, wherein he sought a partition of the property involved in the prior action. As further relief, Spitz requested, *inter alia,* that Abrams' share in the proceeds of the property, if sold, should be held to answer to any judgment he might obtain in the accounting action then pending. On March 12, 1940, the court entered an interlocutory judgment ordering a sale of the property which resulted in its being disposed of for $8,100. The proceeds were delivered to the clerk of the court. Either on June

28, 1940, or on the following July 20th, the parties entered into a stipulation which was filed in and approved by the court on September 13th. This stipulation provided that, after paying the committee's fees and expenses amounting to $114.05, "final judgment may enter for the payment of compensation to the clerk (amounting to $18), the payment of the plaintiff's costs (amounting to $64.07) and the equal division of the balance between Ezekiel Spitz, plaintiff, and Max N. Abrams, defendant, viz: the sum of $3,951.94 to each." And judgment entered accordingly. Whereupon the clerk paid to each his proper share on September 18, 1940.

The second event requiring mention occurred on June 25, 1940. On that day, Abrams as principal and Century Indemnity Company as surety executed and delivered to Spitz a bond in the penal sum of $4,000 in order to obtain from the latter a release of the attachment made in the accounting action on Abrams' interest in the land in question in both actions. The present controversy centers around this bond.

The first special defense advances the claim that at the time of the attachment Abrams had no interest in the land because, through the application of rents he had received, he had exhausted the value of his interest. Consequently, it is urged, there was no consideration for the bond.

The interest that a cotenant possesses is capable of attachment. The process is a mechanical act. The lien thereby created may prove to be of financial value or it may turn out to be worthless in terms of money. Had Abrams and Century Indemnity Company executed a statutory form of bond, a different situation would be presented than that confronting us. This was a common-law bond they delivered. The defendant cannot now escape liability upon the theory that in as much as the alleged attachment did not in reality secure anything, the bond, which was intended as its substitute, ought not have any greater effect. To accomplish such a result, the terms of the bond should have followed the statutory form. *Robertson and Govanne Contracting Co. vs. Aetna Accident and Liability Co.*, 91 Conn. 129. There was ample consideration for the bond when Spitz released the attachment.

The second special defense is concerned with the disposition of the funds in both the accounting and the partition suits. It is the defendant's claim that the $2,310.25 which Spitz had

in his possession as receiver of rents should have been applied on the judgment. As previously indicated, one-half of this belonged to Spitz and while the order of the court was somewhat inconsistent in its manner of expression, only Abrams' share, amounting to $1,155.13, was required to be applied, and this was in fact done, whereby the judgment was reduced to $4,857.58.

But there is the further and final claim that the $3,951.94 that Spitz agreed by stipulation that Abrams might receive from the net proceeds of the sale in the partition suit should have been applied on Spitz's judgment in the accounting action. From this, it is urged that under the principles of suretyship all securities held by the obligee on an undertaking of suretyship must be applied by the obligee to the reduction of his claim and anything done by the obligee which releases the security and thereby injures the surety releases the surety at least to the extent of the value of the securities so released.

The flaw in this logic, it seems to me, lies in the fact that Spitz received at no time any security connected with the giving of the bond. If he received none, he could not very well release any. The disposition of the funds in the partition suit was not connected in any manner with the bond or with any obligations arising therefrom. No suggestion of fraud or collusion has been raised by the surety. Spitz could rely upon the bond he had received in the accounting action when he released his attachment. What he did or what he may have failed to do in the partition action cannot affect his rights under the bond, which was a contract whereby, for a valid consideration, this defendant agreed to pay the plaintiff $4,000 if Abrams failed to pay any judgment which might be rendered against him in the accounting suit. Such a judgment was rendered in the total amount of $6,012.71, with the further sum of $1,617.19 as taxable costs. Abrams has paid and received a satisfaction piece amounting to $1,155.13 upon this judgment. He has failed to pay the balance. Under its agreement, the defendant must now pay what it agreed to pay, no question having been raised as to whether proper demand has been made.

As the unsatisfied part of the judgment exceeds the penalty in the bond, judgment may enter for $4,000 with interest from August 7, 1941, the date of service. Interest, it seems, is allowable even though, by applying it, the amount of the penalty

is exceeded. *Lewis vs. Dwight,* 10 Conn. 95, 103; *American Surety Co. vs. Pacific Surety Co.,* 81 id. 252, 259.

Judgment may enter for $4,146.67.